Jacob Barmon, Appellant, *v.* Jacob Lithauer and Leopold Lithauer, Respondents.

Agreement; breach of, to return a paid or released note; damages upon. Negligence of defendant in action upon a paid or released note. Remedy by appeal; effect of neglect of.

The damages for a breach of an agreement to return a paid or released note, already past due, cannot be the amount of the note, unless it be shown, that, in consequence of the breach, the plaintiff has been, by force of the *prima facie* import of the paper, and its apparent negotiability, compelled to pay it to some subsequent holder, in spite of a diligent endeavor to prove the facts, which, if proved, would constitute a complete defense; or unless he has called upon the party making such agreement, notified him of the suit, and permitted him to take such charge thereof as will protect both of the parties. Hence,

Where H. held a note indorsed by B., which was past due, and H. executed a release thereof to B., and L., a party to the settlement of which this release was a part, agreed to return the note to B., which agreement was not performed, but, on the contrary, the note was transferred to M., who brought an action upon it against B., and recovered the amount of the note, the judgment against B. in the action was erroneous, and, on appeal, must have been reversed; and, such judgment being the result of the neglect of B. to produce evidence, which he might have done, to establish a perfect defense, or to give L. an opportunity of doing so, — or to bring an appeal from the erroneous judgment against him, — it follows, that a judgment for the amount of such recovery, in an action brought by B. against L. for damages for breach of the agreement to return the note, was also erroneous.

Upon the question, whether the damages for the breach of an agreement to return a paid or released note, where the party injured by the breach has used all diligence and employed all proper means to protect himself, can, in any event, be any thing more than merely nominal, see opposing views in the opinions of Miller and Woodruff, JJ.

Appeal from order of General Term of eighth judicial district, reversing the order of Special Term denying a motion for a new trial, and granting a new trial.

This cause was tried at the Erie County Circuit in March, 1863, before one of the justices of the Supreme Court and a jury. It appeared upon the trial, that, in July, 1861, the defendants held a judgment against one Henry Barmon of Buffalo, which was claimed to be security for the payment of an indebtedness to them of $637, for goods sold nominally

to said Henry Barmon, but really to the plaintiff, who was his brother; and also, for the amount of a note of $698.17, given by said Henry Barmon to one Elkin Hyman, and indorsed by said plaintiff, on which had been paid $200. This note was, on the 20th of July, 1861, past due, and had been protested for non-payment, and was then owned by said Hyman. An execution on the judgment had been levied on a stock of goods, and thereupon, on said 20th of July, a settlement was agreed upon between said plaintiff (who was the real debtor to all the demands), and the defendants and Hyman, by which the plaintiff paid, on defendants' demand, the sum of $300 in cash, and defendants took the note of Henry Barmon for the residue; and plaintiff turned out, to secure the payment of the Hyman note, $600 worth of goods, which were deposited in the hands of one Altman, to be delivered in payment of said indebtedness, if the same was not sooner paid, according to the terms of an instrument executed by said Altman to said defendants, by which it was agreed, that the plaintiff was to pay $300 in three months, and $300 in six months, and upon his failure to do so, Altman was to deliver over the goods to the defendants. Upon the delivery of the goods and payment of the $300, and execution of the note of Henry Barmon, the defendants and said Hyman jointly executed a release under their hands and seals of the levy on the execution, and of all claims and demands either of them had against said Jacob Barmon, up to the said 20th of July, 1861.

The settlement was made in the name of defendants, and the plaintiff claims that the defendant, Leopold Lithauer, who transacted the business, represented that his firm owned or controlled the note given to Elkin Hyman, and promised that he would send the same to said Jacob Barmon as quick as he reached New York.

On the same day that the instrument was executed by Altman, the defendants assigned the same to Hyman, and on the 30th of July following, Hyman assigned the same to one Jacob Mack. The money was not paid, and Altman afterward delivered the goods to Mack.

The Hyman note was not sent to plaintiff, but afterward got into the hands of Mack (it would seem under an assignment from Hyman, dated September 3, 1861, but the fact does not distinctly appear), and the plaintiff was by him sued upon it. He put in a defense, but judgment was obtained against him for $578.68 damages and costs, on the first of April, 1862.

The stenographer's notes of the trial in the suit on the note were put in evidence, from which it appeared that the note was overdue at the time of the settlement, and that after it was protested it was returned to Hyman; that the court directed a verdict against the present plaintiff, on the ground that he failed to show that Hyman or defendants owned the note at the time of the settlement, on the 20th of July, 1861. On the trial, neither Hyman nor Mack were called as witnesses. The defendant Leopold Lithauer was sworn, but the defendants were not previously notified of the action or called upon to defend it. The plaintiff paid the judgment, and brought this action to recover the amount. A motion for nonsuit was denied by the court, and defendants excepted. The court was also requested, at the close of the evidence, to direct a verdict for the defendants, but refused, and defendants excepted. The jury found for plaintiff $618.37; a motion for a new trial on the minutes of the court was heard and denied, and, after judgment entered, the defendants appealed from the order denying the motion, and from the judgment to the General Term.

The General Term reversed the order and granted a new trial. The plaintiff appealed to this court, and stipulated, judgment absolute be rendered against him, if the order appealed from should be affirmed.

*Saunders & Caulkins*, for the appellant.

I. The issues of fact, formed by the pleadings, have been properly disposed of by the verdict of the jury, which an appellate court will not review as to the facts so found.

II. The evidence that the appellant was not a party to the agreement, and knew nothing about it, was properly admitted

by the court. The appellant had not signed the instrument, and although he was named in the recital, yet parol evidence was admissible to prove that he was not a party to it, and had no knowledge of it.

Parol evidence is admissible as to the parties or subject-matter of a contract. (2 Pars. Con. 61.)

It may be given to qualify or contradict the recitals of a contract. (2 Pars. Con. 66.)

III. The motion for a nonsuit was properly denied. The plaintiff had established a complete right of recovery against the defendant.

IV. The ruling of the court in refusing to direct a verdict for the defendants was correct. The case presented a question of fact, which it was proper should be submitted to the jury.

The judgment of General Term granting new trial should be reversed with costs to Barmon, on appeals, and judgment of circuit affirmed.

*Samuel Hand,* for the respondents.

I. This new trial having been granted by the General Term, on appeal from the order of the special Term denying it, according to the well-settled practice of this court, it will be deemed to have been granted on questions of fact, and if the court find any evidence whatever in the case, authorizing a decision in favor of the defendants, they will affirm the order. But, of course, if the defendant Lithauer's evidence in the case is believed, there is no cause of action whatever against them.

II. But upon the merits, the defendants should have had a verdict directed in their favor, and the plaintiff proved no cause of action against them.

1. The case shows clearly that at the time of the settlement between the plaintiff and Hyman and the defendants, on the 20th July, 1861, the note belonged to Hyman. The plaintiff having then paid it, and got Hyman's release under seal, the note was no longer a valid security, nobody could

acquire any title in it — Mack or any body else — and the plaintiff could not be injured.

(*a*) From the stenographer's notes of the Mack trial, introduced by the plaintiff, it appeared uncontradicted, that the note, after it became due, was returned to Hyman, and it was assigned by Hyman to Mack on September 3, 1861, long after due. This was certainly enough, uncontradicted, to show *prima facie*, that Mack did not get the note until after due, and after it was paid. The plaintiff should rebut it by evidence to the contrary; but none whatever was given.

2. If the note belonged to the Lithauers at the time of the settlement, the result is the same; it was paid, and they had released the plaintiff. No one could afterward acquire any title to it.

III. The judgment of Mack against the plaintiff upon the note, was not admissible against the defendants, to prove that Mack had good title, or that the plaintiff had been damnified.

1. The defendants had no notice of the suit; they were not made parties, nor called upon by the plaintiff to defend it. It was, therefore, no evidence whatever against them of the facts adjudged thereby.

2. The decision was clearly and palpably erroneous. Enough had, at least, been shown by Barmon to entitle him to submit the question of the time of the transfer to the jury, and they were authorized to find from it, that Hyman held the note at the time it became due, and that it was then paid. And yet, from this error of the court, Barmon took no appeal. He did not call Hyman to show the facts, and, indeed, appears generally to have tried the case, as if he desired to be beaten. The subsequent purchase by his father-in-law of the judgment, gives the whole transaction a suspicious look.

IV. The pretense, sworn to by the plaintiff, that he offered to Altman the $600, and that he refused to deliver the goods, raises no cause of action against the defendants.

1. It may have done so against Altman, if true, but the defendants never covenanted that Altman would deliver back the goods. He was selected by the plaintiff as his depositary,

and accepted by the defendants as their trustee. A violation of his trust certainly gives no cause of action against them.

2. The plaintiff does not swear that he offered the $300 within three months, nor indeed any thing within three months. This was necessary to entitle him to the goods.

The order for a new trial should be affirmed.

MILLER, J. It is manifest, from the testimony in this case, that, at the time of the settlement between the plaintiff and the defendants and Elkin Hyman, on the 20th day of July, 1861, the note on which the plaintiff was liable as indorser belonged to Hyman. It had been protested prior to that time, and was then in Hyman's possession. Such being the fact, on the same day, and as a part of the settlement then made between the parties, Hyman executed, under seal, a release to the plaintiff of all claims and demands then existing against him, which necessarily embraced the note in question, and which exonerated the plaintiff from any liability to pay it. The note thereby became discharged and canceled, and no one could acquire any title to it as against the plaintiff. If we assume that the note belonged to, or was in the possession of, the defendants, then the answer is, that it was not a valid security, and was extinguished by the release before referred to, which was also executed by the defendants. There is no evidence which tends to establish that the note in question, at the time of the settlement, belonged, or had been assigned or transferred, to any one else; but it is uncontradicted, that, after it became due, it was returned to Hyman and afterward transferred to one Mack, who prosecuted the plaintiff, and recovered a judgment against him for the amount remaining unpaid upon it. The suit, being brought after the note became due, and after it was paid, was open to any defense which then existed against it in the hands of Hyman, or of the defendants. It could not be lawfully collected of the plaintiff, and, — independent of the fact that judgment was obtained upon it, and that the amount is alleged to have been collected by Mack

of the plaintiff, — there is no difficulty in determining what disposition should be made of this case.

The question then arises, whether the circumstances existing, really change the aspect of the case or alter the rights of the parties. I think that they cannot be thus regarded. The note was paid and of no value, and it adds not one particle to its validity, that a judgment was obtained, provided this was done without any fault on the part of the defendants. They cannot be held responsible for a judgment procured against the plaintiff by default, or by his negligence, without their knowledge or consent. The fact that such a judgment was obtained would not of itself, render the defendants liable if they were previously exonerated. In order to make them responsible, the defendants should have been notified of the commencement of the action, and have been permitted to defend it, had they chosen to do so. They had no such notice, and were not called, or furnished with an opportunity to interpose any defense. Although one of them was called as a witness, yet no offer was made to permit the defendants to control the defense, or to allow them to testify to, or to furnish evidence to establish, — as the case shows, could easily have been done, — that Hyman was the owner of the note at the time of the negotiation and when the release was executed.

Such evidence would have established a successful defense to the note, and have prevented a recovery. Even if the facts proved had not sufficiently disclosed that Mack had no title to the note, by reason of the release discharging the plaintiff before its transfer, it is enough, I think, that this could have been proved, by calling upon Hyman or either of the defendants for that purpose. But, I think, even as the evidence stood, the history of the trial between Mack and the plaintiff shows that the case was erroneously decided, and that a different result should have ensued. This should not have been acquiesced in by the plaintiff here, but it was his duty to appeal from the decision to a higher tribunal. The recovery by Mack, against the plaintiff, was caused by the neglect of the plaintiff to call witnesses who could have established a complete defense, and in not taking the proper

steps to review the erroneous decisions of the court where the action was tried. As, then, the plaintiff suffered a judgment to be obtained against him by his own negligence, and took no proper steps to make the defendants responsible for the result, it would be manifestly unjust that the defendants should reap the consequences of his acts.

If we assume that the plaintiff could have maintained an action upon the breach of contract arising from the failure of the defendants to send back the note which was released and discharged, then how stands the case? He could not recover the amount of a note which had been paid, and was therefore valueless, but merely nominal damages for the detention of a note against which there was a good and lawful defense. The recovery of the judgment did not flow as a direct consequence of the neglect of the defendants to return the note, but was the immediate result of an imperfect defense and of an erroneous decision of the justice who tried the cause, from which no appeal was taken. These are not damages arising directly from the breach of the contract itself, but are remote and contingent, and even if the action was maintainable upon the facts presented, a recovery for the full amount of the note was clearly wrong.

There is no ground for any recovery for the goods left with Altman, and I do not understand that the plaintiff claims any thing more than the note.

The judgment of the General Term should be affirmed, and judgment absolute be rendered in favor of the defendants.

Woodruff, J. The order granting a new trial was, beyond all question, proper in this case. The action was brought for a breach of the defendants' alleged agreement to take up and return to the defendant a promissory note, made by Henry Barmon, for $698.17, dated March 15th, 1861, payable four months after date, to the order of the plaintiff, and by him indorsed and transferred to Elkin Hyman, which note, though made by Henry Barmon, was made, indorsed and delivered for goods which the plaintiff bought of Hyman,

ostensibly as agent for his brother, but in reality for himself, his brother's name being only used as "a cover."

This agreement is alleged to have been made on the 20th of July, 1861, which was two days after the note became due.

The plaintiff, on his own behalf, testified distinctly that $200 had been paid thereon when or before the agreement was made; that at that time Hyman had the note, and that it had been protested. And he also produced and proved a release, under seal, executed by the defendants, and by Hyman, bearing date on the day of the alleged agreement, July 20th, 1861, by which the defendants and Hyman released him from all claim and demand they or either of them had, for or by reason of any matter, cause or thing, to the day of the date thereof.

The plaintiff then gave evidence to show that afterward, one Mack sued him upon the note, and recovered judgment against him for $578.68, including costs; and that one of the defendants was called and examined as a witness in his favor. But, otherwise, it did not appear that the defendants were notified or called upon to defend the action. Hyman was not called as a witness, when it was palpable that if the facts were as testified on this trial, his evidence must have prevented a recovery in that suit.

The case, then, made by the plaintiff, taking every disputed question in his favor, is this: One Hyman held a note, which was indorsed by the defendants, which was past due and protested. The holder (Hyman) executed a release thereof to the plaintiff, and the defendants agreed to return it to him. The note was of no value whatever in the plaintiff's hands, because it was made and delivered to the holder for goods purchased by the plaintiff for himself. The agreement was not performed, but, on the contrary, an action was brought upon the note by another party. The plaintiff did not call upon the defendants to protect him against the suit, and did not call the witnesses who could have testified to the facts to which he now swears, when, obviously, it was quite easy to do so. (Indeed, I quite agree that but for an erroneous view of the subject, taken on the trial of that action, the

court would have nonsuited the plaintiff, and that, on appeal, the judgment must have been reversed.)

Upon these facts, the plaintiff has a verdict in this cause, and judgment for the whole amount of the recovery against him in that action, including the costs.

I think, that upon the proofs, there was nothing to warrant such a judgment. The damages for a breach of an agreement to return a paid or released note, already past due, cannot be the amount of the note, unless it be shown, that in consequence of the breach, the plaintiff has been, by force of the *prima facie* import of the paper, and its apparent negotiability, compelled to pay it to some subsequent holder, in spite of a diligent endeavor to prove the facts, which, if proved, constitute a complete defense, or unless he calls upon the party to the agreement, notifies him of the suit, and permits him to take such charge thereof as will protect them both.

It may be possible to suppose a case in which, by reason of the death of the only witnesses who can testify to the facts, a party who has once paid or been released from a note, may be compelled to pay it to one, who, in truth, received it after its maturity; but, *prima facie*, a paid note is worthless paper.

Where, as in this case, the note was in the hands, not of the promisor, but of another, and was in itself of no value to the plaintiff, the largest latitude of construction which the plaintiff could claim for the agreement, would be to treat it as tantamount to an agreement to keep him safe from liability upon his indorsement, according to the legal effect of the release. The liability which was established against him in the present case was due to his own negligence, and not to any actual liability.

I am not, however, prepared to assent to the proposition, insisted upon in the court below, that the plaintiff could, notwithstanding he was sued on the note, in no case recover more than nominal damages. If he had notified the defendants, and called on them to protect him, had himself used due diligence, and had been successful in defeating the

suit brought against him, he would, nevertheless, have sustained actual damages by the neglect of the defendant to take up and return to him the note. Presumptively, the agreement was made for the purpose of preventing the passing of the note by Hyman, the then holder, to other hands, and the possible necessity which the plaintiff in such case would be under of defending an action, employing counsel, and devoting time, labor, etc., to the establishment of a defense, which, had the defendant performed his agreement, would not be necessary, and against which that agreement was intended to protect him.

But the present verdict and judgment were not rendered upon any such theory, nor for such expenses. I think the new trial was properly ordered.

Order affirmed.